# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIMACY ENGINEERING, INC., a New Jersey Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ITE, INC, a Virginia Corporation; ISPA TECHNOLOGY, LLC, a Virginia Limited Liability Company; TED RAITCH, an individual; CHRISTIAN S. BROWN, an individual; and Does 1-100,<br><br>Defendants. | Case No.: 3:18-cv-01781-GPC-MDD<br><br>**ORDER**<br><br>**(1) DENYING MOTION FOR RECONSIDERATION [ECF No. 48];**<br><br>**(2) GRANTING DEFENDANTS ATTORNEY'S FEES.** |

There are two issues before the Court: the correctness of its January 4, 2019 Order awarding Defendants ITE, Inc. and Ted Raitch ("Defendants") attorney's fees as prevailing parties on their anti-SLAPP motion against Plaintiff Primacy Engineering, Inc. ("Primacy"), and the amount to be awarded to Defendants in the event that the Order stands. (ECF No. 48.)

Primacy brought its challenge to the determination on attorney's fees on January 7, 2019, when it filed a motion for reconsideration. (ECF No. 48.) That motion asserted that the January 4, 2019 Order must be reconsidered because it was premised on

misleading and incorrect information supplied by Defendants' counsel. (ECF No. 45.) On January 22, 2019 Defendants submitted an opposition (ECF No. 51), and Primacy filed a reply on January 29, 2019 (ECF No. 52).

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the pending matters suitable for adjudication without oral argument. For the reasons articulated below, the Court will **DENY** Primacy's motion for reconsideration and **GRANT** Defendants attorney's fees in the amount of $81,537.30.

## I. Background

### A. Factual History

Much of the relevant background to this litigation has been recounted in the Court's previous Order, and the Court will liberally draw from that discussion here.

Primacy Engineering is a New Jersey corporation that had—through various predecessor entities operated by its principal, Mr. Deckwon, or Bryant Kang[1]— previously won several lucrative subcontracts to supply key components for South Korean military hovercrafts manufactured by Hanjin Heavy Industries Corporation ("Hanjin"). (ECF No. 1-2, at 4.) In the lead up to this litigation, Primacy sought to leverage its goodwill with Hanjin to cement another such contract. However, according to Primacy, several of its competitors, including Alturdyne Power Systems, LLC ("Alturdyne"), began agitating in an attempt to obtain Primacy's contracts and to drive Primacy out of business.

Specifically, it is alleged that Mr. Raitch, an employee of ITE, was responsible for mailing a number of "poison packages" to Primacy's business partners and to federal law enforcement agencies. (*Id.* at 19.) Primacy represents that the poison packages alleged "past and ongoing criminal conduct and press for a foreign corrupt practices act

---

[1] The complaint in this action nowhere mentions Mr. Kang; Defendants claim that this is because Mr. Kang is Primacy's "deliberately hidden principal." Indeed, documents supplied by Defendants in this action establish a clear relationship between Primacy and Mr. Kang. (*See, e.g.*, 51-2, at 7 (email identifying Bryan Kang with a "primacyengineering.com" email address).)

2

("FCPA") investigation of Primacy by federal authorities." (*Id.*) These poison packages, in conjunction with the disparaging comments made by Mr. Raitch and his employer, ITE, are alleged to have "made it nearly impossible" for Primacy to be awarded military contracts. (*Id.* at 5.)

**B. Procedural History**

Primacy filed suit in state court on May 4, 2018. Its complaint contained six causes of action for intentional interference with prospective economic relations, intentional interference with contractual relations, unfair competition/ unfair conduct, and negligent hiring and supervision. The case was removed to federal court on August 1, 2018.

Thereafter, on August 8, 2018, Mr. Raitch and ITE filed a Motion to Dismiss for failure to state a claim (ECF No. 23), and a Motion to Dismiss for lack of jurisdiction (ECF No. 7). At the same time,[2] Defendants submitted a Motion to Strike Primacy's Complaint under California's anti-SLAPP statute, contending that Primacy's suit was an improper attempt to chill protected speech—i.e., their efforts to bring a potential FCPA violation to the attention of the authorities, and to spread knowledge of a public issue pertaining to defense contracting malfeasance. (ECF No. 21.) Upon Primacy's request, the parties filed, and the Court granted, a joint motion for an extension of time for Primacy to respond to the Defendants' motions. (ECF No. 8.) However, despite being granted additional time, Primacy never responded to Defendants' motions to dismiss or their anti-SLAPP motion. As a consequence, the Court construed Primacy's non-opposition to Defendants' motions to dismiss as consent to grant the motions pursuant to Local Rule 7.1.f.3.c. (ECF No. 31, at 2.) The Court therefore ordered the Defendant's motion to dismiss be granted and their request to strike pursuant to the anti-SLAPP statute, moot. (ECF No. 31, at 3.)

---

[2] To be precise, Defendants' Motion to Dismiss for failure to state a claim and their special motion to strike were withdrawn due to a technical error and later re-filed on a later date.

After the dismissal of Primacy's complaint, Defendants, in conjunction with two co-defendants, Mr. Christian Brown and his employer, ISPA, filed an attorney's fees motion pursuant to Cal. Code Civ. Pro. § 425.16(c)(1), and a motion to amend the Court's order to reflect that their anti-SLAPP motion was not mooted as it relates to associated attorney's fees.[3] The fees motion sought recompense for work done by three attorneys in preparing Defendants' anti-SLAPP motion, their motion to amend, and their motion for attorneys' fees. Primacy opposed the motion, arguing that attorney's fees should not be issued because Primacy's dismissal of the suit was unrelated to the underlying merits of their case or Defendants' anti-SLAPP motion.

In deciding the motion, the Court considered the parties arguments' and reviewed declarations proffered by both sides.

First, the Court entertained the declaration of Mr. Albert Oh, Primacy's Vice President of Corporate Development, which was attached as an exhibit to Primacy's opposition. (ECF No. 40-1 (Decl. of Albert Oh, dated Nov. 30, 2018).) Mr. Oh averred that "Primacy had a good faith reason for deciding not to pursue the claims [against Defendants] . . . . In August/September 2018, after bringing this action, Primacy experienced changed circumstances in its line of business that would limit Primacy's damages in this action. Specifically, after the filing of Primacy's Complaint . . . Hanjin . . . announced that its military hovercrafts manufactured for the South Korean Navy, Hanjin would only employ Korean companies as suppliers of the key components previously supplied by Primacy." (*Id.* at 2.) Thus, Primacy, as a New Jersey corporation, was effectively barred as a subcontractor for Hanjin, "rais[ing] a significant issue on causation of damages." (ECF No. 40, at 10.) Mr. Oh concluded his declaration by reasserting that "Primacy's decision to forego its claims against Defendants had nothing to do with the merits of Defendants' Anti-SLAPP motions." (*Id.*)

---

[3] Mr. Brown and ISPA have since reached a separate settlement with Plaintiff and have ceased to seek the relief sought by Defendants.

4

The Court then considered a contrary declaration from Defendants' counsel, Mr. Christopher J. Bakes, which was attached to Defendants' reply. (ECF No. 43-1 (Decl. of Christopher J. Bakes, dated December 21, 2018).) Mr. Bakes recounted that, according to his notes and memoranda of settlement discussions with Mr. Jesse Gessin, counsel for Primacy, during August and September 2018, the period during which Primacy alleges to have learned of Hanjin's new subcontracting specifications, Mr. Gessin was silent as to this development. Instead, Mr. Gessin advised on an August 31, 2018 call that Primacy would dismiss the instant case with prejudice but intended to bring the action again in a different jurisdiction. (*Id.* at 2.) Mr. Bakes was further informed that should Defendants desire a full release, they would have to pay for one. (*Id.*)

In considering the above, the Court noted that Mr. Gessin's representations contradicted the explanation stated in Primacy's opposition to attorney's fees. Namely, Mr. Gessin's communications indicated that Primacy had been resolute in pursuing the merits of its complaint (albeit outside of this jurisdiction) during the very period that Primacy claimed to have decided that litigation was no longer worth its while. This undermined Mr. Oh's assertion that it was Hanjin's newly-announced contracting requirements that changed Primacy's economic calculus in pursuing this suit, and suggested that Primacy invoked Hanjin's policy change solely in an attempt to defeat Defendants' motion for attorney's fees. Noting that it was Primacy's burden to demonstrate either that it realized its litigation objectives, or dismissed its suit for reasons other than its merits, the Court concluded that Primacy was obligated to pay attorney's fees. The Court deferred ruling on the actual amount of fees to be awarded pending Defendants' submission of detailed time records justifying their hours claimed.

After the entry of this Order, Primacy filed a motion for reconsideration. (ECF No. 48.) Primacy argues that the Order should be reconsidered because the Court in issuing it relied on Mr. Bakes's mischaracterizations of the settlement negotiations with Mr. Gessin to discount Mr. Oh's declaration. Specifically, Primacy argues that contrary to Mr. Bakes's claims, there was no inconsistency between Mr. Oh's declaration and the

settlement negotiations in August and September 2018. Primacy further argues that Defendants neglected to reveal that in September 2018, Primacy offered Defendants a "walk away" settlement agreement, and disputes that Mr. Gessin ever communicated that Primacy intended to file suit in other jurisdictions. Defendants counter that Mr. Bakes's characterization of settlement negotiations are corroborated by counsel for co-defendant Christian Brown, and that in any event, Hanjin's decision in August or September of 2018 had little logical relationship to Primacy's complaint, which was primarily predicated on past injury, rather than future lost profits or opportunities.

## II. Motion for Reconsideration

### A. Legal Standard

Generally, reconsideration of a prior order is appropriate only if the district court is (1) presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust or (3) if there is an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Reconsideration may also be appropriate when a court "has misunderstood a party's argument or made an error of apprehension." *O'Neal v. Johnson*, No. 2:14-CV-2374 DB PS, 2017 WL 2730977, at *1 (E.D. Cal. June 26, 2017) (quoting *Villanueva v. United States*, 662 F.3d 124, 128 (1st Cir. 2011)).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Whether to grant or deny a motion for reconsideration is committed to the "sound discretion" of the district court. *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). A party may not raise new arguments or present new evidence if it could have raised them earlier in the litigation. *Kona Enters.*, 229 F.3d at 890. Reconsideration motions are not intended to give parties a "second bite at the apple." *Ausmus v. Lexington Ins. Co.*, No. 08-CV-2342 L (LSP), 2009 WL 2058549, at *2 (S.D. Cal. July 15, 2009). Neither are they devices permitting the unsuccessful party to "rehash" arguments previously presented. *Id.*

**B. Attorney's Fees Under Section 425.16(c)(1),**

Section 425.16(c)(1) of the California Code of Civil Procedure provides that a prevailing defendant on an anti-SLAPP motion is entitled to reasonable attorney's fees. CAL. CODE CIV. PROC. § 425.16(c)(1). Attorney's fees may be awarded even, where, as here, the Primacy dismisses the action before the anti-SLAPP motion is heard. *See Pfeiffer Venice Properties v. Bernard*, 101 Cal.App.4th 211, 218 (2002) ("[A] defendant who has been sued in violation of his or her free speech rights is entitled to an award of attorney fees . . . even if the matter has been dismissed prior to the hearing on that motion").

In ascertaining the prevailing party, federal courts follow the analysis set out in *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998). *See Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1043 (S.D. Cal. 2017). Under *Coltrain*, a plaintiff's failure to resist a motion to dismiss raises a rebuttable presumption that the defendant is the prevailing party.

> [W]here the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under Code of Civil Procedure section 425.16, subdivision (c). In making that determination, the critical issue is which party realized its objectives in the litigation. Since the defendant's goal is to make the plaintiff go away with its tail between its legs, ordinarily the prevailing party will be the defendant. The plaintiff, however, may try to show it actually dismissed because it had substantially achieved its goals through a settlement or other means, because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits.

*Id.* at 107. Thus, the inquiry is a "pragmatic" one, turning on "which side achieved their objectives." *Ryan v. Editions Ltd.*, No. C-06-4812 PVT, 2007 WL 2778408, at *3 (N.D. Cal. Sept. 21, 2007).

**C. Primacy's Arguments and Additional Evidence**

Upon Primacy's consent to dismissal[4], "a presumption arose that defendants were the prevailing parties." *Coltrain*, 66 Cal. App. 4th at 108. Previously, Primacy attempted to overcome this presumption by arguing that it had a good faith reason for ending the case—i.e., Hanjin's August/ September 2018 decision to contract exclusively with Korean companies—which had nothing to do with the merits of the complaint or Defendants' anti-SLAPP motion. (ECF No. 40, at 10.) The Court found this claim contradicted by Mr. Bakes's contemporaneous notes and memoranda of the settlement discussions.

Now, upon its motion for reconsideration, Primacy alleges that Mr. Bakes had omitted critical details from the parties' negotiations consistent with its claim that Primacy had declined to press its claims due to Hanjin's newly-instituted contracting requirements.

Primacy submits the declaration of Mr. Gessin, who recounts a very different version of the parties' August and September communications, and in particular, the August 31, 2018 conversation relayed by Mr. Bakes. (ECF No. 48-1 (Decl. of Jesse Gessin, dated Jan 7, 2019).) During August 2018, Mr. Gessin apparently advised Mr. Bakes that he would take all settlement offers to Primacy, including a "walk-away" offer without payment to his client. (*Id.* at 3 ("Primacy has always been fully willing to settle this matter as a 'walk-away'.")) Mr. Gessin also claims that at no point during the August 31, 2018 conversation with Mr. Bakes did he ever state that Defendants would have to pay for a full release from Primacy. He recounts only having expressed that Primacy could not control non-parties, like Mr. Kang and Alturdyne, whose claims Defendants sought to include in any settlement agreement. He recalled advising that if Defendants wanted a release from either non-party, Defendants would have to settle with

---

[4] Although Primacy did not technically voluntarily dismiss its complaint, its actions fall under the rubric of *Coltrain*. Pursuant to the local rules, failure to file a timely opposition pursuant to a court-ordered briefing schedule "may constitute a consent to the granting of a motion." Civ. Local R. 7.1.f.3.c.

8

them individually. Thus, according to Primacy, there was no inconsistency between Mr. Oh's declaration and what actually transpired during the course of negotiations between the parties' attorneys.

**D. Defendants' Arguments and Additional Evidence**

In response, Defendants make the following points. First, they argue that Primacy had in fact intimated (through its affiliates, Alturdyne or Mr. Kang) it would be pursuing similar litigation in other forums notwithstanding any resolution of the instant case. Second, they argue that Primacy had no proof of Hanjin's policy change, and that even if such took place, the policy change in August or September 2018 had no relation to the true reason for Primacy's failure to pursue the claims filed in this case for damages accruing before May 2018.

Defendants' opposition rests on declarations from Mr. Bakes and Mr. Ted Raitch. Mr. Bakes's new declaration comes appended with attachments of the entirety of the emailed communications between the parties from early August to November, 2018. (ECF No. 51-1 (Decl. of Christopher Bakes, dated Jan. 22, 2019).) Those communications include an August 17, 2018 demand letter from Primacy which identified Alturdyne as a new Primacy acquisition. (ECF No. 51-1, at 13.) For the release of Primacy's claims, the letter sought $3.5 million, i.e., the "approximate amount of profit that Primacy would have obtained from its prospective contract with Hanjin, but lost due to Defendants' conduct," plus $150,000 that Primacy "had to pay" to purchase Alturdyne, also "as a result of Defendants' conduct." (*Id.*) After the letter, the parties discussed the possibility of a walk-away settlement. On August 31, 2018, Mr. Gessin and Mr. Bakes participated in a teleconference, the salient points of which were summarized by Mr. Bakes in an email to counsel for co-defendants on September 4, 2018 as follows:

- "Plaintiff Primacy will dismiss the entire action without prejudice but Jesse Gessin threatens that his litigious client will bring the action again in a different jurisdiction."

- "He said if we wanted a full release and not have to face suit in another jurisdiction, we would have to pay for it. He stated that is the only way to avoid being named in a new action."

(*Id.* at 24.) A day later, counsel for co-defendant Mr. Christian Brown followed up on Mr. Bakes's email, confirming that he just "spoke with [Mr. Gessen] and received similar information to what was imparted to each of you," namely that:

- "Primacy will be filing a dismissal of the lawsuit without prejudice;"
- "Primacy plans to re-file the lawsuit in Florida and Virginia/Maryland as to IPSA/Brown and ITE/Raitch respectively;"
- "Primacy will NOT entertain a general release of claims without significant monetary contributions;"
- "Primacy will not entertain a general release of claims without significant monetary contributions."

(*Id.* at 26.)

Thereafter, Mr. Bakes took the first step to produce a draft of the settlement between Primacy and Defendants. Mr. Gessen reviewed the draft and expressed that Primacy was not amenable to having Mr. Kang as a signatory. In response, Mr. Bakes offered to remove Mr. Kang as a signatory in exchange for including him and Altrudyne as releasors and inserting an indemnity provision which would require Primacy to indemnify Defendants in any later action brought by any releasor. (ECF No. 48-2, at 28.) Mr. Gessen rejected this offer on behalf of Primacy, commenting that neither Mr. Kang nor Alturdyne were part of the lawsuit, and that Primacy was unable to bind either Mr. Kang or Alturdyne. (*Id.* at 34.) Defendants did not accept the resulting settlement, perceiving Mr. Kang and Alturdyne as effective alter-egos of Primacy and viewing their inclusion as releasors critical to forestalling any future threats of litigation. (ECF No. 51-1, at 10.)

Mr. Raitch's declaration explains why he believes Primacy's walk-away offer had nothing to do with any contracting change on Hanjin's part. (ECF No. 51-2 (Decl. of Ted

10

3:18-cv-01781-GPC-MDD

Raich, dated Jan. 22, 2019).) Mr. Raitch explained he is familiar with Hanjin because one of his client companies is a Hanjin subcontractor. (*Id.* at 1.) He states he was not aware of any change in Hanjin's contracting requirements, and that he believed that Primacy's conduct during the time period of the alleged shift in contracting preferences belies any claim that any such change actually took place.

Mr. Raitch first points to an email forwarded to him on August 24, 2018, by his client, the Hanjin subcontractor. (ECF No. 51-2, at 9.) In that email, Primacy warned the subcontractor that it was in the process of "reporting [Hanjin] to the U.S. Department of DDTC, about [Hanjin's] potential ITAR violation." (*Id.*) Mr. Raitch next points to an email sent by an attorney on behalf of Primacy and Alturdyne jointly, to Nebraska Gas Turbine, Inc. on August 28, 2018. (*Id.* at 12.) In this second email, Primacy and Alturdyne demanded Nebraska Gas Turbine cease and desist on its contract with Hanjin "to perform overhaul work on Auxiliary Power Unit for Korean LSF-II." (*Id.*) Primacy and Alturdyne asserted that "they are the only entities allowed under the Technical Assistance Agreement (TAA), which remains in effect, to perform any and all work on the APUs." (*Id.* at 13.) Mr. Raich asserts that these two emails are contrary to Primacy's late-blooming assertion that it could no longer obtain Hanjin contracts because of its new policy against non-Korean contractors, since Primacy continued to maintain a threatening posture toward Hanjin and those associated with Hanjin during the period Hanjin was alleged to have announced a policy that would have precluded any future contracting with Primacy. (*Id.* at 4.)

**E. The Court will not reconsider its prior Order**

Having been apprised of the foregoing, the Court declines to revisit its prior holding. Primacy's burden on a motion for reconsideration was two-fold: to demonstrate that the Court had overlooked or misapprehended facts, and that but for that error, a different result would have obtained. Primacy has partially succeeded in demonstrating the first component, but entirely failed on the latter task.

First, the Court recognizes that, prior to the motion for reconsideration, neither party disclosed that Primacy had initiated walk-away settlement discussions in August of 2018. Primacy brandishes this fact as "entirely consistent" with Mr. Oh's declaration as to Primacy's changed circumstances and its decision to forego its claims. (ECF No. 48, at 4.) The Court agrees that Primacy's interest in starting walk-away talks in September 2018 is *not inconsistent* with a claim that it experienced a fundamental change in circumstance with respect to Hanjin. However, that fact also does not prove that it was Hanjin's changed contracting requirements which prompted Primacy's decision to forego its claims: one fact that is not inconsistent with another does not by necessity prove the same. If anything, it can be equally true that Primacy's offer to settle claims *without payment* from Defendants demonstrates that Primacy did not "substantially achieve[] its goals through a settlement," and was not the "party [who] realized its objectives in the litigation." *Coltrain*, 66 Cal. App. 4th at 107. By offering evidence of its willingness to entirely discharge the suit at no cost to Defendants, Primacy significantly calls into question any notion that it achieved its objectives in litigation.

There is, moreover, plenty of evidence suggesting that Hanjin was unrelated to Primacy's decision to forego the case. As Defendants point out, Primacy's complaint and demand letter primarily sought damages for past injuries.

With respect to the demand letter, only one out of six causes of action—for unfair competition and unfair conduct—seeks relief against prospective harm. (*See* Complaint, ECF No. 1-2, at 37 (alleging that Primacy "has suffered, is suffering, and will continue to suffer economic injury as well as serious irreparable harm to its reputation, business, and goodwill").) All remaining causes of action seek compensation for harm suffered prior to the filing of the complaint in May 4, 2018. (*See e.g.*, *id.* ("As a direct result of Mr. Brown and Mr. Raitch's acts, and Alturdyne's breach of the Agreement and the implied covenant of good faith and fair dealing, Primacy *has suffered damages* in an amount to be determined at trial." (emphasis added).) The lion's share of the prayer was also geared towards vindicating past injury: Primacy sought damages for lost profits, price erosion, a

decrease in value of Primacy's business, and exemplary damages. As Defendants correctly argue, all of these would be damages already incurred at the time of filing, regardless of what Hanjin might do later in August and September 2018. (ECF No. 51, at 3.)

The August 17, 2018 demand letter, which offered a "full and final release of all claims in exchange for payment of the total economic damages," also suggests that Primacy's lawsuit was predicated on past harm which predated, and runs independently of, Hanjin's alleged policy change. (ECF No. 51-1, at 13.) Primacy's $3.65 million demand was premised on a "prospective contract with Hanjin," which it "lost due to Defendants' conduct," and a sum which Primacy "had to pay to purchase Alturdyne." (*Id.*) Nowhere in this letter does Primacy discuss damages attributable to future lost profits and ability to contract with Hanjin. Both the complaint and demand letter suggest that the crux of Primacy's litigation objectives pertained to vindicating *past*, not future injury.

Mr. Raitch's declaration also undermines Primacy's claims that it was motivated by a change in Hanjin's contracting requirements. For one, Mr. Raitch casts doubt that Hanjin actually announced any such change. For another, Mr. Raitch points out the contradiction inherent in Primacy's threats to Hanjin and Hanjin's subcontractors at time where it is alleged to have known that it could no longer hope to compete for any future contracts.

Finally, the dueling declarations between Mr. Bakes and Mr. Gessin must be resolved in favor of Mr. Bakes. Although Mr. Gessin disputes that he made statements that Primacy would dismiss this suit and refile in another jurisdiction, or that Primacy would require Defendants to pay for a full release of all claims, Mr. Bakes's contrary account is the more credible, corroborated as it is by co-defense counsel's notes and summarization of a similar conversation with Mr. Gessin. Moreover, regardless of what Mr. Gessin might have communicated verbally, the emailed correspondence between the parties is indicative of Primacy's (or its principal, Mr. Kang's) desire to re-instigate

13

similar litigation in other judicial fora. If Primacy, which is alleged to be controlled by Mr. Kang, had no intent of reinstating litigation, then it should have been willing to sign a release offering indemnification in the event that Mr. Kang would re-raise the claims elsewhere. An intent to refile the litigation in other jurisdictions belies a claim that Primacy was able to substantially achieve its litigation objectives in this suit, and denies the inference that Primacy forewent the litigation for reasons unrelated to the merits.

To conclude, although Primacy succeeded in showing that the Court was not made aware of certain facts upon its ruling on Defendants' motion for attorney's fees, Primacy failed to establish that those facts would have changed the outcome of that motion. The Court is not convinced that Primacy dropped its suit because of a causation issue presented by Hanjin's announcement. Ironically, the facts at hand only reaffirm the Court's prior determination that Primacy did not achieve its objectives in litigation and abandoned the suit for reasons other than Hanjin's alleged change in contract requirements. Primacy failed to rebut the presumption that Defendants were the prevailing parties, and its motion for reconsideration is accordingly **DENIED.**

## III. Deferred Motion on Attorney's Fees

Having determined that the Court's prior order awarding Defendants attorney's fees is not subject to attack, the Court turns to the issue of the amount of the fees award.

Previously, the Court preliminarily approved Defendants' request for attorney's fees for three attorneys, Mr. Bakes, Mr. David M. Florence, and Mr. Vincent R. Whitaker, of Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois"), for time spent drafting and preparing for Defendants' Anti-SLAPP motion, the motion to amend, and the motion for attorney's fees.[5] However, because Defendants did not give an account of the reasonableness of the hours claimed with the level of particularity required by law,

---

[5] The Court determined that the requested hourly rates for each attorney ($550 per hour for Mr. Whitaker and Mr. Bakes; $475 per hour for Mr. Florence) were reasonable in light of the prevailing standards in the community. (ECF No. 45, at 10.)

14

the Court deferred ruling on the fees request and directed Defendants to submit "detailed time records justifying the hours claimed to have been expended." (ECF No. 45, at 11, quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) *amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987).)

### A. Fees Request for the Lewis Brisbois Attorneys

On January 14, 2019, Defendants timely responded to this directive with the supplemental declaration of Mr. Florence. (ECF No. 50 (Decl. of David Florence, dated Jan. 14, 2019).) Defendants seek the following amounts for work performed (and expected to be performed) by the three attorneys from Lewis Brisbois, as substantiated by contemporary billing invoices:

| Task | Amount Claimed | Supporting Documentation |
| --- | --- | --- |
| Anti-SLAPP motion, motion to amend, motion for attorney's fees[6]<br><br>(Prior to filing on October 23, 2018.) | $47,547.50<br><br><br><br>(46 hours billed by Mr. Bakes, 11 hours by Mr. Whitaker, and 34.1 hours by Mr. Florence) | Invoices dated July 12, 2018, Aug. 8, 2018, Oct. 16, 2018, and Nov. 8, 2018<br><br>(ECF No. 50, at 7–25.) |
| Reply to motion for attorney's fees[7], and opposition to Primacy's motion for reconsideration<br><br>(October 23, 2018, up to January 14, 2019.) | $33,990<br><br><br><br><br><br>(40.9 hours billed by Mr. Bakes, and 24.2 hours by Mr. Florence) | Invoices dated Nov. 8, 2018, Dec. 10, 2018, Jan. 9, 2019, and a pre-bill for legal services rendered for January 2019<br><br>(ECF No. 50, at 25–34.) |

---

[6] "Time spent preparing a motion for attorneys' fees is generally compensable." *Cohen v. Williams*, No. CIV. S-06-605 FCD/DAD, 2007 WL 174329, at *4 (E.D.Cal. Jan. 22, 2007).

[7] *L.A. Printex Indus., Inc. v. William Carter Co.*, No. CV 09-2449-JFW (FMOx), 2010 WL 4916634, at *8 (C.D. Cal, Dec. 1, 2010) (approving attorney's fees for time spent preparing reply and related declarations to attorney's fees motion).

| TOTAL AMOUNT | $81,537.30[8] |

Having reviewed the tasks commemorated in the invoices and considered them against the complexity of issues raised in the parties' satellite dispute over attorney's fees, the Court concludes that the hours claimed by the Lewis Brisbois lawyers are reasonable. The tasks reported were all time-consuming, and the Court's review of the billing records failed to demonstrate the time spent by counsel was excessive in light thereof. Accordingly, Defendants are entitled to $81,537.30 in attorney's fees for the hours claimed by the Lewis Brisbois lawyers in relation to the motion for attorney's fees and motion for reconsideration.

### B. Fees for Lawyers at Bae Kim & Lee

Mr. Florence's declaration also includes a new request for $6,007.22 in attorney's fees for services provided by Bae Kim & Lee, Korean co-counsel for Defendants. According to Mr. Florence, Bae Kim & Lee were "retained to provide legal research and review concerning pertinent Korean law and the Korean conviction of Deckwon Kang," with respect to the anti-SLAPP motion. (ECF No. 50, at 4.) This request must be denied for two reasons.

First, Defendants never requested attorney's fees for Bae Kim & Lee in their motion for attorney's fees; as a result, the Court's January 4, 2019 Order did not address them. Defendants' request for the Bae Kim & Lee fees, advanced for the first time in a supplemental declaration to the Court's request for more detailed time records *from the Lewis Brisbois attorneys*, is improper and untimely.

Second, even assuming that the request is properly before the Court, Defendants have not met their burden of proving that attorney's fees should issue. It is well established that "the burden is on the fee applicant to produce satisfactory evidence—in

---

[8] Defendants also estimate a future request for $10,000 for time spent preparing the opposition to the motion for reconsideration. No time records have been submitted to substantiate that claim and at this juncture the Court is not prepared to grant the request.

16

addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 985 n.11 (1984). Ordinarily, "[a]ffidavits of the [prevailing party's] attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Here, Defendants have not endeavored to establish—through affidavits or otherwise—the reasonableness of the fees rates charged by Bae Kim & Lee, in light of the prevailing fees in the relevant community.

Fees for the Bae Kim & Lee attorneys are denied.

## IV. Conclusion

In light of the above, the Court **DENIES** Primacy's motion for reconsideration. (ECF No. 48.) Defendants, as the prevailing party under the anti-SLAPP statute, are **entitled to an attorney's fee award of $81,537.30**. Accordingly, the motion hearing scheduled for May 10, 2019 shall be **VACATED**.

**IT IS SO ORDERED.**

Dated: May 8, 2019

Hon. Gonzalo P. Curiel
United States District Judge